THE COUNTY OF SARPY, NEBRASKA, A BODY CORPORATE AND POLITIC, APPELLANT, V. THE CITY OF GRETNA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

678 N.W.2d 740

Filed May 7, 2004.   No. S-02-1473.

Tamra L.W. Madsen, Deputy Sarpy County Attorney, for appellant.

John K. Green for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The City of Gretna sits entirely within the borders of Sarpy County, Nebraska. Pursuant to two municipal ordinances, Gretna purported to annex sections of two state highways which extend from Gretna's borders. Sarpy County filed suit, claiming that Gretna was without authority to annex the land. The district court determined that Sarpy County lacked standing to bring the action and sustained Gretna's demurrer. The question on appeal is whether Sarpy County has standing to contest the allegedly unlawful annexations.

FACTUAL AND PROCEDURAL HISTORY

Sarpy County is a political subdivision located in eastern Nebraska. Gretna is a municipal corporation organized and operating under the laws of the State of Nebraska as a city of the second class. Gretna is located entirely within Sarpy County.

On July 31, 2001, Gretna's city council adopted ordinances Nos. 740 and 741. Generally speaking, the ordinances proposed to annex certain lands adjoining Gretna's borders. Specifically, ordinance No. 740 proposed to extend Gretna's corporate limits southward to include Nebraska State Highway 6/31 from its intersection with Capehart Road in south Gretna to a point one-half mile north of Fairview Road. Ordinance No. 741 proposed to extend Gretna's corporate limits eastward to include Nebraska State Highway 370 from its intersection with 204th Street to the midline of the intersection of 180th Street.

On June 20, 2002, Sarpy County filed a petition in the district court challenging the annexations. Sarpy County claimed that the annexations were illegal, null, and void because (1) none of the property sought to be annexed was urban or suburban as required under Neb. Rev. Stat. § 17-405.01 (Reissue 1997); (2) none of the property sought to be annexed was adjacent or contiguous to the existing boundaries of Gretna, except for the narrow strips of the highways which are the subjects of the ordinances; (3) the sole purpose of the annexations was to increase revenue; (4) Sarpy County already provided the annexed property with all necessary benefits and services; (5) Gretna usurped the authority of Sarpy County to govern its affairs in the areas of zoning and planning; and (6) Gretna's purpose was to extend its sphere of influence in the area, rather than to serve the public interest as required by law.

Gretna filed a demurrer, and then an amended demurrer, to Sarpy County's petition. The district court sustained Gretna's amended demurrer; however, the record does not reveal on what basis. Thereafter, Sarpy County filed an amended petition. In response, Gretna filed a motion to make more definite and certain, and to strike. This motion was partially granted by the district court. Sarpy County then filed a second amended petition. Again, Gretna filed a demurrer. In its demurrer, Gretna asserted that (1) Sarpy County does not have legal capacity to sue, (2) there is a defect of parties, (3) the petition does not state facts sufficient to constitute a cause of action, and (4) the district court does not have subject matter jurisdiction over the action. The district court determined that Sarpy County lacked standing to bring the action and sustained Gretna's demurrer. The court also determined that Sarpy County could not correct the defect and dismissed the action. Sarpy County filed a timely notice of appeal.

## ASSIGNMENT OF ERROR

Sarpy County assigns two errors, more properly restated as one: The district court erred in determining Sarpy County lacks standing to contest the annexations by Gretna.

## STANDARD OF REVIEW

In reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together

with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept the conclusions of the pleader. *Arthur v. Microsoft Corp., ante* p. 586, 676 N.W.2d 29 (2004).

■ Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *Adam v. City of Hastings, ante* p. 641, 676 N.W.2d 710 (2004).

## ANALYSIS

As an initial matter, we note that we need not concern ourselves with the legality of the annexations. Nor do we need to determine, as Sarpy County suggests, whether its petition states a cause of action. Instead, the sole issue before us is whether Sarpy County has standing to contest the allegedly illegal annexations of property by Gretna. We conclude that it does.

■ Standing is the legal or equitable right, title, or interest in the subject matter of the controversy. *Id.* Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Id.* Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Id.*

■ The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Id.* In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *Id.* The litigant must have some legal or equitable right, title, or interest in the subject of the controversy. *Id.*

Essentially, Sarpy County argues that it pled facts sufficient to establish standing. In reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept the conclusions of the pleader. *Arthur v. Microsoft Corp., supra.*

We note that Sarpy County's second amended petition was redacted to comport with the district court's order granting, in part, Gretna's motion to strike. Because Sarpy County did not assign this ruling as error, we rely only on Sarpy County's operative, second amended petition to determine whether Sarpy County pled facts sufficient to establish standing. See *Billups v. Troia*, 253 Neb. 295, 570 N.W.2d 706 (1997) (in absence of plain error, appellate court considers only claimed errors which are both assigned and discussed).

Over the last 50 years, our jurisprudence with respect to a party's standing to challenge an annexation of territory has developed considerably. In *Wagner v. City of Omaha*, 156 Neb. 163, 55 N.W.2d 490 (1952), resident property owners sued the City of Omaha in an attempt to enjoin the annexation of their land. The issue of the property owners' standing arose, and we determined that an action to enjoin an annexation could be maintained by (1) a municipality that was scheduled to be annexed to another municipality or (2) a person who owned or was a voter in the territory scheduled to be annexed. *Id.*

This enumeration of real parties soon proved to be too rigid, however, and in *Sullivan v. City of Omaha*, 183 Neb. 511, 162 N.W.2d 227 (1968), we determined that the list of real parties with standing to sue, announced in *Wagner*, was not exclusive. Instead, we determined that the focus of the standing inquiry should be on whether the "person has a personal, pecuniary, and legal interest which is adversely affected by an annexation ordinance." 183 Neb. at 513, 162 N.W.2d at 229. See, also, *Johnson v. City of Hastings*, 241 Neb. 291, 488 N.W.2d 20 (1992). If so, that individual has a sufficient interest upon which to contest the validity of the ordinance. *Sullivan v. City of Omaha, supra.*

In *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995), *disapproved in part, Adam v. City of Hastings, ante* p. 641, 676 N.W.2d 710 (2004), we restricted the class of persons who could have a personal, pecuniary, and legal interest which is adversely affected by an annexation ordinance. We determined that persons who are not residents, property owners, taxpayers, or electors of an annexed area generally do not have standing to challenge the annexation. *Id.* Moreover, we noted that in order to have standing, a party must also allege a special injury that is

personal in nature: "a party seeking to restrain an act of a municipal body [relative to annexation] must show some *special injury peculiar to himself* aside from a general injury to the public." (Emphasis supplied.) *SID No. 57*, 248 Neb. at 495, 536 N.W.2d at 64. See, also, *Sullivan v. City of Omaha, supra*.

Thus, with regard to a party's standing to challenge an annexation, the current state of our law can be described in the following manner: At the broadest level, every party must show (1) a personal, pecuniary, and legal interest that has been affected by the annexation and (2) the existence of an injury to that interest that is personal in nature. Persons who have the requisite personal, pecuniary, and legal interest include residents, property owners, taxpayers, and electors of the annexed area. Conversely, as a general rule, persons who are not residents, property owners, taxpayers, or electors of the annexed area do not have the requisite personal, pecuniary, and legal interest.

Again, we note, as we did in *Sullivan v. City of Omaha, supra*, that the aforementioned list of enumerated parties is not exclusive. The touchstone of the inquiry remains whether a party has a personal, pecuniary, and legal interest in the controversy. In this regard, we have determined on a number of occasions that parties outside of the enumerated list have a sufficient interest upon which to base standing. For example, we have determined that plaintiffs whose land is outside the annexed area but whose land would fall within the annexing city's zoning authority if the challenged annexation of nonplaintiff land was permitted have (despite not being residents, property owners, taxpayers, or electors of the annexed area) the requisite personal, pecuniary, and legal interest upon which to base standing. See, *Johnson v. City of Hastings, supra*; *Piester v. City of North Platte*, 198 Neb. 220, 252 N.W.2d 159 (1977); *Sullivan v. City of Omaha*, 183 Neb. 511, 162 N.W.2d 227 (1968).

In the instant case, it is obvious that Sarpy County is not a resident, property owner, taxpayer, or elector of the annexed highways, and Sarpy County did not plead, nor does it contend, otherwise. Nonetheless, Sarpy County argues that it pled facts sufficient to show that it has a personal, pecuniary, and legal interest that has been adversely affected by the annexations. Specifically, Sarpy County contends it has standing because (1)

it has lost approximately $38,000 in revenue from rezoning applications, building permit fees, platting fees, and other zoning fees that it once collected but are now being collected by Gretna; (2) it provides law enforcement services on the annexed roadways; (3) of the numerous dedicated roads and streets that it maintains within the areas to be included in the newly created extraterritorial zoning jurisdiction of Gretna; and (4) the annexations have allowed Gretna to usurp Sarpy County's right to zone what was formerly in Sarpy County's zoning jurisdiction.

Of the few courts that have examined whether a county has standing to challenge a city's annexation plan, the majority have determined that a county has standing. See 1 Sandra M. Stevenson, Antieau on Local Government Law § 3.10[3] (2d ed. 1999). However, they have done so under varying rationales. For example, courts have determined that a county which owns property within the annexed area has standing to challenge the annexation. See, *Bd. of Co. Com'rs of Laramie v. Cheyenne*, 85 P.3d 999 (Wyo. 2004); *City of Tampa v. Hillsborough County*, 504 So. 2d 10 (Fla. App. 1986). Courts have also determined that an alleged loss of revenue from taxes or fees serves as a sufficient injury upon which a county can base standing. See, *Harrison County v. City of Gulfport*, 557 So. 2d 780 (Miss. 1990); *Bd. of Cty. Com'rs v. City & Cty. of Denver*, 714 P.2d 1352 (Colo. App. 1986); *City of Sunrise v. Broward County*, 473 So. 2d 1387 (Fla. App. 1985). Still other courts have determined that the loss of territorial integrity and/or the ability to zone serves as a sufficient injury upon which a county can base standing. See, *Denver v. Miller*, 151 Colo. 444, 379 P.2d 169 (1963); *New Castle County v. City of Wilmington*, No. 7788, 1984 WL 19831 (Del. Ch. Dec. 28, 1984) (unpublished opinion).

While the stated rationales may vary, the underlying logic of these cases is that an annexation alters the normal relationship, i.e., power structure, between the two governmental entities. Stated otherwise, these courts have recognized that when a city annexes land within a county's borders, the city infringes upon, in a variety of ways, a county's governmental function. Obviously, this is an intended consequence of annexation. After all, the purpose behind annexations is for the city to replace, at least in some respects, the governmental function of the county in the annexed

area. However, this does not mean a county is without a legally protectable interest.

A county is a creature of statute, and its power to act must originate from statute. See, *Guenzel-Handlos v. County of Lancaster*, 265 Neb. 125, 655 N.W.2d 384 (2003); *DLH, Inc. v. Lancaster Cty. Bd. of Comrs.*, 264 Neb. 358, 648 N.W.2d 277 (2002). Because a county's governmental function is the product of the Legislature's will, it is a legally protectable interest that a county is capable of defending from an allegedly improper infringement. Therefore, we hold that if a county alleges that a city, through an unlawful annexation plan, has encroached upon its governmental function, it has alleged an injury sufficient to give it standing to challenge the annexation plan.

As listed above, Sarpy County has alleged that the unlawful annexations have altered and/or deprived it of its statutory authority to act in and around the annexed area. Relevant to Sarpy County's allegations, we note that under Nebraska law, county boards have been given zoning authority. See Neb. Rev. Stat. §§ 23-114 et seq. and 23-164 et seq. (Reissue 1997, Cum. Supp. 2002 & Supp. 2003). In conjunction with this power, county boards have also been given the authority to set a reasonable schedule of fees for the issuance of zoning permits. See § 23-114.04. Additionally, county boards have been given the authority to supervise and control the public roads within the county's borders. See, Neb. Rev. Stat. § 39-1402 (Reissue 1998); *Art-Kraft Signs, Inc. v. County of Hall*, 203 Neb. 523, 279 N.W.2d 159 (1979); *Brym v. Butler County*, 86 Neb. 841, 126 N.W. 521 (1910).

Thus, Sarpy County has alleged that Gretna, through an unlawful annexation, has encroached upon certain aspects of its governmental function. Stated otherwise, Sarpy County has properly alleged that the annexations have adversely affected a personal, pecuniary, and legal interest. Moreover, the alleged injury is undoubtedly unique to Sarpy County. Therefore, Sarpy County is not resigned to sit idly by if it has a good faith belief that Gretna, through an allegedly unlawful annexation plan, would deprive it of the power granted to it by statute.

## CONCLUSION

For the foregoing reasons, we conclude that Sarpy County has standing to challenge Gretna's allegedly unlawful annexations.

The judgment of the district court is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.