WASTE CONNECTIONS OF NEBRASKA, INC., A DELAWARE CORPORATION, DOING BUSINESS AS MIDWEST REFUSE AND RECYCLING SERVICE, INC., AND BUTLER COUNTY LANDFILL, INC., A NEBRASKA CORPORATION, APPELLANTS, V. CITY OF LINCOLN, NEBRASKA, A CITY OF THE PRIMARY CLASS OF THE STATE OF NEBRASKA, APPELLEE.

697 N.W.2d 256

Filed May 27, 2005.   No. S-03-1356.

Stephen D. Mossman and J.L. Spray, of Mattson, Ricketts, Davies, Stewart & Calkins, for appellants.

Dana W. Roper, Lincoln City Attorney, Margaret Blatchford, and William F. Austin, of Erickson & Sederstrom, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Waste Connections of Nebraska, Inc. (Waste Connections), and Butler County Landfill, Inc. (collectively the appellants), sought declaratory judgment and injunctive relief and challenged the constitutionality of an occupation tax imposed by the City of Lincoln on licensed haulers of solid waste. The district court denied the appellants' motion for injunction. Thereafter, the appellants filed an amended verified petition, which set forth an

additional allegation that the city had judicially admitted that the occupation tax did not apply to the appellants under an exception to the tax because a portion of their waste was destined for interstate commerce. The appellants then filed a second motion for injunction, which was denied by the district court. The district court dismissed with prejudice all of the appellants' theories of recovery. The appellants filed an appeal, and we granted their motion to bypass the Nebraska Court of Appeals.

## BACKGROUND

Waste Connections is a Delaware corporation authorized to do business in the State of Nebraska. Waste Connections does business in the city as Midwest Refuse and Recycling Service, Inc., a licensed solid waste hauler which controls an estimated 20 percent of Lincoln's solid waste. Waste Connections also operates two solid waste landfills in Nebraska: Butler County Landfill, which is located outside David City, and G & P Landfill, which is located outside Milford. The appellants allege that of the approximately 39 licensed solid waste haulers servicing Lincoln, Waste Connections is the only one not owned by residents of Lincoln or Lancaster County. The appellants claim that Waste Connections is also the only licensed hauler in the Lincoln solid waste market that does not regularly take Lincoln-generated waste to the Lincoln-operated public landfill, commonly referred to as the "Bluff Road Landfill." Instead, Waste Connections hauls Lincoln-generated waste to the Butler County Landfill and to the G & P Landfill. According to the appellants, these facilities charge less than the $17-per-ton disposal fee charged at the Bluff Road Landfill.

In 1992, the Nebraska Legislature enacted the Integrated Solid Waste Management Act (the Act). See Neb. Rev. Stat. § 13-2001 et seq. (Reissue 1997 & Cum. Supp. 2004). The Act set waste reduction and recycling goals, banned selected materials from landfills, and required local jurisdictions to prepare comprehensive solid waste management plans. In response to the Act, the city, through its comprehensive solid waste management plan, established programs for the collection and processing of banned materials. The city also initiated a countywide recycling program and a household hazardous waste collection

program. Historically, these programs have been funded in part by the gate fees from the Bluff Road Landfill.

The city acknowledges that Waste Connections' deportation of waste outside the city negatively affected the revenues collected by the Bluff Road Landfill and, therefore, revenue used to fund the city's comprehensive solid waste management program. In response, the city sought a mechanism to ensure that its waste management programs continued to be offered in the city. The city states that it contemplated the adoption of a flow control ordinance, which would have ensured that all waste generated within the jurisdiction would be directed to the Bluff Road Landfill, but recognized that such ordinances had not been received favorably by the U.S. Supreme Court. Therefore, the city instead adopted an occupation tax, which would fund the city's various waste collection programs, and reduced the tipping fee at the Bluff Road Landfill from $17 to $10. According to the city, the purpose of the tipping fee reduction was so that the tipping fee would reflect the actual cost of the landfill operation and not the subsidies for the various collection programs.

On March 17, 2003, Lincoln enacted ordinance No. 18149 and resolution No. A-82000. Ordinance No. 18149 amended Lincoln Mun. Code § 8.32 (1991) relating to solid wastes. Among other things, ordinance No. 18149 eliminated the previous annual occupation tax of $100 per refuse vehicle and established in lieu thereof an occupation tax of $7 per ton on all refuse collected within corporate limits of the city or any refuse deposited at the public sanitary landfills. Under § 5(d)(1) of ordinance No. 18149, the occupation tax is not imposed on refuse destined for deposit at any location outside the state. Resolution No. A-82000, in turn, reduced the tipping fees at the Bluff Road Landfill from $17 per ton to $10 per ton. Both measures were effective June 1, 2003.

Thereafter, the appellants instituted the present action. The appellants sought declaratory judgment pursuant to Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1995 & Cum. Supp. 2004) and a temporary and permanent injunction pursuant to Neb. Rev. Stat. § 25-1062 et seq. (Reissue 1995 & Cum. Supp. 2004) on the bases that ordinance No. 18149 violates the dormant Commerce Clause and the 14th Amendment and that the occupation tax is

not uniform, in violation of art. VIII, § 1, of the Nebraska Constitution, and is confiscatory.

Shortly following the filing of the appellants' verified complaint, the district court held a temporary injunction hearing. Following this hearing, the district court entered its first order. In this order, the district court found that the purpose of the ordinance was to raise revenue, not regulate flow; that the occupation tax did not violate the Commerce Clause; that the categories in the ordinance are "logical and reasonable"; that the occupation tax is not confiscatory; and that the ordinance is constitutional and authorized by statute.

The appellants then filed a verified amended complaint in which they set forth the additional allegation that the city had judicially admitted that waste destined for material recovery facilities is exempt from the occupation tax. Material recovery facilities are facilities which sort out garbage and place the recyclables from the garbage into the stream of commerce. As alleged by the appellants, the Butler County Landfill is a material recovery facility and, therefore, waste destined for the facility is exempt from the tax; thus, there is no basis for waste destined for that facility to be weighed prior to leaving the city limits.

The appellants then filed a second motion for temporary injunction on the verified amended complaint. A hearing was held on this motion, and the district court entered its second order. In that order, the court held that the new allegation contained in the appellants' verified amended petition was without merit and that the appellants had not sufficiently shown irreparable injury entitling them to injunctive relief. The district court also held in the second order that under the "balance test" set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970), the burden imposed on the plaintiffs is not clearly excessive in relation to the putative local benefit of raising revenue. Subsequently, the district court entered its third order in which it dismissed with prejudice all theories of recovery in the appellants' verified amended petition. The appellants timely appealed, and we granted their motion to bypass the Court of Appeals pursuant to Neb. Ct. R. of Prac. 2B (rev. 2002) and Neb. Rev. Stat. § 24-1106(2) (Reissue 1995).

## ASSIGNMENTS OF ERROR

The appellants assign, restated and consolidated, that the district court erred in concluding that (1) ordinance No. 18149 did not violate the dormant Commerce Clause of the U.S. Constitution; (2) ordinance No. 18149 did not violate the Equal Protection Clauses of the U.S. and Nebraska Constitutions; (3) ordinance No. 18149 is statutorily authorized; (4) ordinance No. 18149 did not contain unreasonable classifications in violation of art. VIII, § 1, of the Nebraska Constitution; and (4) the occupation tax contained in ordinance No. 18149 is reasonable and not a confiscatory fee.

## STANDARD OF REVIEW

■ Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *County of Sarpy v. City of Gretna*, 267 Neb. 943, 678 N.W.2d 740 (2004).

■ The constitutionality of an ordinance presents a question of law, in which an appellate court is obligated to reach a conclusion independent of the decision reached by the trial court. *Village of Winslow v. Sheets*, 261 Neb. 203, 622 N.W.2d 595 (2001).

## ANALYSIS

Relying on various federal cases, the appellants argue on appeal that the occupation tax imposed by the ordinance is actually a fee, not a tax. The appellants also argue that the district court erred in determining that ordinance No. 18149 is constitutional. They claim that the ordinance violates the dormant Commerce Clause in that it is discriminatory in both purpose and effect. Applying the two-tiered analysis adopted by the U.S. Supreme Court, the appellants claim that the ordinance is subject to the "strictest scrutiny" because it discriminates against interstate commerce. Brief for appellants at 21. Consequently, the burden falls on the city to demonstrate that all other alternatives to the ordinance are ineffective, a burden the appellants maintain the city cannot meet. See *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 114 S. Ct. 1345,

128 L. Ed. 2d 13 (1994). The appellants further claim that the ordinance violates their equal protection rights because it treats licensed waste haulers such as Waste Connections differently than other haulers. For example, the ordinance does not require that the occupation tax be paid by homeowners who haul refuse from their residence to the public sanitary landfills, individuals hauling or conveying building rubbish or demolition, or individuals hauling lawn waste. The appellants maintain that there exists no rational basis for the creation of this distinction. Finally, the appellants argue that the ordinance is not authorized by statute because it is not uniform, which violates the Nebraska Constitution, and that the occupation tax is confiscatory.

The city argues that the district court properly dismissed the appellants' theories of recovery. It maintains that contrary to the appellants' contentions, the levy imposed by ordinance No. 18149 is a true and valid tax. It further claims that because the issue is the constitutionality of a tax, the appropriate dormant Commerce Clause test to apply is the four-part analysis found in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977). Under that test, a court looks at whether (1) the tax is applied to an activity with a substantial nexus with the taxing state, (2) the tax is fairly apportioned, (3) the tax does not discriminate against interstate commerce, and (4) the tax is fairly related to the services provided by the state. The city claims that if the tax meets this test, as the city maintains it does, the tax is deemed valid and the court need not undertake a balancing of benefits and burdens of the tax.

## BUTLER COUNTY LANDFILL STANDING

The city contends that Butler County Landfill lacks standing to bring the present appeal. We disagree.

Standing is the legal or equitable right, title, or interest in the subject matter of the controversy. *County of Sarpy v. City of Gretna*, 267 Neb. 943, 678 N.W.2d 740 (2004). It is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Id.* Either a litigant or a court before which a case is pending can raise the question of standing at any time during the proceeding. *In re Trust Created by Del Castillo*, 268 Neb. 671, 686 N.W.2d 900 (2004).

In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *County of Sarpy v. City of Gretna, supra.* In order for a party to establish standing to bring suit, it is necessary to show that the party is in danger of sustaining direct injury as a result of anticipated action, and it is not sufficient that one has merely a general interest common to all members of the public. *Governor's Policy Research Office v. KN Energy*, 264 Neb. 924, 652 N.W.2d 865 (2002).

The ordinance imposes an occupation tax of $7 on each ton of refuse collected by a refuse hauler within the corporate limits of the city. The appellants allege that the imposition of this tax makes it financially unfeasible for Waste Connections to continue dumping its refuse at the Butler County Landfill, thereby reducing Butler County Landfill's revenues. We conclude that the appellants have alleged an injury sufficient to give Butler County Landfill standing in the present action. See *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583 (8th Cir. 2003) (holding that imminent loss of business as result of enforcement of contested state constitutional amendment satisfied injury-in-fact requirement of standing).

## DORMANT COMMERCE CLAUSE

The appellants claim that the district court erred in determining that ordinance No. 18149 does not violate the dormant Commerce Clause. The Commerce Clause grants Congress the authority to regulate commerce. U.S. Const. art. I, § 8, cl. 3. The dormant Commerce Clause is the negative implication of the Commerce Clause. Under the dormant Commerce Clause, states may not enact laws that discriminate against or unduly burden interstate commerce. *South Dakota Farm Bureau, Inc. v. Hazeltine, supra* (citing *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992)). The concern of the dormant Commerce Clause is the raising of barriers by states against the free flow of interstate commerce. Therefore, the clause denies states, and their political subdivisions, the power to unjustifiably discriminate or burden the interstate flow of articles of commerce. See, *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 114 S. Ct. 1345, 128

L. Ed. 2d 13 (1994); *Blue Circle Cement v. Board of County Com'rs*, 27 F.3d 1499 (10th Cir. 1994). In the present case, the ordinance does not burden interstate commerce, and therefore, it does not violate the dormant Commerce Clause.

Ordinance No. 18149 states in pertinent part:

(a) There is hereby imposed an occupation tax of $7.00 on each ton of refuse collected by a refuse hauler within the corporate limits of the City of Lincoln, and a tax of $7.00 on each ton of refuse collected by a refuse hauler outside the corporate limits of the City of Lincoln and deposited in the public sanitary landfills as designated in Section 8.32.040 of the Lincoln Municipal Code. The occupation taxes authorized herein shall be used exclusively for funding solid waste management programs, including the payment of principal and interest on revenue bonds issued by the City of Lincoln.

. . . .

(c) All refuse collected by refuse haulers within the corporate limits, whether destined for deposit in the public sanitary landfills as designated in Section 8.32.040 or for deposit elsewhere, shall, before leaving the corporate limits of the City of Lincoln, be weighed at the scales located at the public sanitary landfill at 56th Street and Bluff Road or at such other scales approved by the Director of Public Works and Utilities. The refuse hauler shall, at that time, advise the sanitary landfill operator or his designated representative of the amount of such tonnage destined for deposit outside the State of Nebraska. Any refuse not being deposited at the public sanitary landfills designated under Section 8.32.040, whether destined for deposit inside or outside the State of Nebraska, shall be weighed and the driver of the refuse vehicle shall be provided a certificate of weight which shall be displayed upon demand to any police officer of the City of Lincoln.

(d) The occupation tax provided herein shall not be imposed upon (1) refuse destined for deposit at any location outside the State of Nebraska, or (2) building rubbish or demolition debris lawfully being deposited in the 48th Street public sanitary landfill.

■ The ordinance imposes an occupation tax of $7 per ton on all haulers operating within the city limits without regard to a hauler's locality. Thus, a hauler from another state pays the same tax as a hauler from Nebraska if waste collected within the city limits is destined for deposit within Nebraska. Similarly, if the waste is destined for deposit outside Nebraska, neither a hauler from Nebraska nor a hauler from any other state is required to pay the tax. This equal treatment of in-state and out-of-state haulers under an ordinance is not a burden on interstate commerce; rather, it is a burden on intrastate commerce, which is not protected under the dormant Commerce Clause. We therefore determine that the ordinance does not violate the dormant Commerce Clause.

### EQUAL PROTECTION

The appellants claim that the district court erred in failing to find that the ordinance unconstitutionally violates the Equal Protection Clauses of the U.S. Constitution and the Nebraska Constitution. The appellants contend that the ordinance violates equal protection because it treats licensed waste haulers differently than homeowners who haul refuse from their residence to the public sanitary landfills, individuals hauling or conveying building rubbish or demolition, and individuals hauling lawn waste.

■ Equal protection guarantees that similar persons will be dealt with similarly by the state, but does not foreclose the state from classifying persons or from differentiating one class from another when enacting legislation. *Gas 'N Shop v. City of Kearney*, 248 Neb. 747, 539 N.W.2d 423 (1995). The clause simply keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike. *Pfizer v. Lancaster Cty. Bd. of Equal.*, 260 Neb. 265, 616 N.W.2d 326 (2000).

■ In an equal protection challenge, when a fundamental right or suspect classification is not involved, the act is a valid exercise of police power if the act is rationally related to a legitimate governmental purpose. *Gas 'N Shop v. City of Kearney, supra.* The party attacking a statute as violative of equal protection has the burden to prove that the classification violates the Equal Protection Clause. *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003).

The appellants claim that there is no rational basis for failing to charge an occupation tax to all haulers of waste within the city limits. The city's brief claims there is a rational basis for exempting individuals who haul their refuse to landfills because these individuals are not "refuse haulers" as set forth in the ordinance. Brief for appellee at 22. A further rational basis is that the city wants to encourage households to bring their trash to the landfill as opposed to illegal dumping along the roadside. As for exempting building rubbish and demolition debris, this refuse can be deposited only at the 48th Street public landfill, where it is beneficial as a fill. The city, therefore, has provided a rational basis even though it was not its burden to do so. The appellants, on the other hand, have failed to offer any evidence that the tax is not rationally related to the city's purposes of imposing a tax. Consequently, the appellants have not met their burden of showing that the ordinance violates equal protection.

## UNIFORMITY

The appellants further claim that the ordinance is not statutorily authorized because the occupation tax is not uniform.

Neb. Const. art. VIII, § 1, provides as follows:

> The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct. . . . Taxes shall be levied by valuation uniformly and proportionately upon all real property and franchises . . . . Taxes other than property taxes may be authorized by law.

In *State v. Galyen*, 221 Neb. 497, 378 N.W.2d 182 (1985), we held that the uniformity and proportionality requirements of Neb. Const. art. VIII, § 1, do not apply to excise taxes. An excise tax is defined as a "tax imposed on the manufacture, sale, or use of goods . . . or on an occupation or activity." Black's Law Dictionary 605 (8th ed. 2004). See *State v. Galyen, supra.*

The "occupation tax" in the present case is imposed on all licensed haulers who wish to haul refuse within the city limits. As such, it is an excise tax, not a fee as alleged by the appellants, and is not subject to the uniformity and proportionality requirement of the Nebraska Constitution. See *Licking v. Hays Lumber Co.*, 146 Neb. 240, 19 N.W.2d 148 (1945) (holding tax imposed as annual charge upon right to continue corporate existence is excise tax).

CONFISCATORY

In *Hoyt Bros. v. City of Lincoln*, 130 Neb. 79, 263 N.W. 898 (1936), the undisputed evidence was that Lincoln was charging the plaintiff's peddlers a monthly license fee of $15 and a monthly occupation tax of $40, for a total of $55 per month. The evidence further showed that each peddler's average earnings was only $2 per day. This court held that the ordinances approving these charges, as applicable to the plaintiff, were confiscatory and amounted to a prohibition to transact business in Lincoln. This court noted that if the license fee and occupation tax were enforced, "[p]rofit, the incentive to private enterprise, will be gone." *Hoyt Bros. v. City of Lincoln*, 130 Neb. at 81, 263 N.W. at 899.

Another instructive case is *Petersen Baking Co. v. City of Fremont*, 119 Neb. 212, 228 N.W. 256 (1929). In *Petersen Baking Co.*, we held that where the net profit of a bakery was $420 per year, and the tax imposed by Fremont was $300, the incentive to sell and deliver bread in Fremont would be destroyed, amounting to an illegal prohibition of the right to do so.

Since it is the appellants' contention that the occupation tax is confiscatory, it is the appellants' burden to prove this allegation. It is a fundamental principle that the burden of proof in any cause rests upon the party who, as determined by the pleadings or the nature of the case, asserts the affirmative of an issue. *Miller v. Westwood*, 238 Neb. 896, 472 N.W.2d 903 (1991). The burden of proof means the duty resting on one party or the other to establish by a preponderance of the evidence an issue essential to recovery. *Id.*; *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996).

The appellants have failed to put forth any evidence establishing that they are unable to carry on their business as a result of the occupation tax. Because they have failed to meet their burden of proof, we determine that the appellants' final claim is without merit.

CONCLUSION

For the reasons set forth in this opinion, we affirm the district court's denial of the appellants' requests for injunctive relief.

AFFIRMED.