Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/09/2020 02:10 AM CST

Diversified Telecom Services, Inc., a corporation
organized under the laws of the State of
Nebraska, appellant, v. State of Nebraska,
Nebraska Department of Revenue, and
Tony Fulton, Tax Commissioner of the
State of Nebraska, appellees.

___ N.W.2d ___

Filed August 14, 2020.    No. S-19-883.

1. **Administrative Law: Judgments: Appeal and Error.** When reviewing
   an order of the district court under the Administrative Procedure Act
   for errors appearing on the record, the inquiry is whether the decision
   conforms to the law, is supported by competent evidence, and is neither
   arbitrary, capricious, nor unreasonable.
2. **Administrative Law: Statutes: Appeal and Error.** The interpretation
   of statutes and regulations presents questions of law, in connection with
   which an appellate court has an obligation to reach an independent con-
   clusion irrespective of the decision made by the court below.
3. **Statutes: Appeal and Error.** An appellate court will not resort to
   interpretation to ascertain the meaning of statutory words that are plain,
   direct, and unambiguous.
4. **Statutes: Legislature: Intent.** A collection of statutes pertaining to a
   single subject matter are in pari materia and should be conjunctively
   considered and construed to determine the intent of the Legislature, so
   that different provisions are consistent, harmonious, and sensible.
5. **Taxation.** There is no double taxation unless both taxes are of the same
   kind and have been imposed by the same taxing entity, for the same tax-
   ing period, for the same taxing purpose, and upon the same property or
   the same activity, incident, or subject matter.
6. ____. Unless it is unreasonable, confiscatory, or discriminatory, double
   taxation is not unconstitutional or prohibited, although it is the court's
   policy to guard against it.

7. **Taxes: Words and Phrases.** A tax is confiscatory if it is established that it is so high as to effectively prohibit a taxpayer from engaging in a particular business.

8. **Taxation: Statutes: Legislature: Intent.** The Legislature may enact laws that result in double taxation, and if it does, it is a valid exercise of the taxing power, and if the plain meaning of a statute results in double taxation, courts will enforce the Legislature's intent.

9. **Taxes: Sales: Property.** The legal incidence of a sales tax falls upon the purchaser, because it is a tax upon the privilege of buying tangible personal property.

10. **Equal Protection.** In an equal protection challenge, when a fundamental right or suspect classification is not involved, the act is a valid exercise of police power if the act is rationally related to a legitimate governmental purpose.

11. **Equal Protection: Statutes: Proof.** The party attacking a statute as violative of equal protection has the burden to prove that the classification violates the Equal Protection Clause.

Appeal from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

Andrew C. Pease and Thomas E. Jeffers, of Crosby Guenzel, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and L. Jay Bartel for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

INTRODUCTION

The Nebraska Department of Revenue (Department) issued a sales tax deficiency assessment to Diversified Telecom Services, Inc. (Diversifed). Diversified filed a petition for redetermination, which was denied by the Tax Commissioner (Commissioner). Diversified appealed to the district court, which affirmed the decision of the Commissioner.

On appeal, Diversified's primary argument is that the district court erred in agreeing with the Department that Diversified

must pay sales or use tax on building materials purchased by Diversified and also must remit sales tax when it bills its customers for the same building materials once those materials are annexed to real property in the course of Diversified's "furnishing, installing, or connecting" of mobile telecommunications services under Neb. Rev. Stat. § 77-2701.16(2)(e) (Supp. 2019). This appeal requires the interpretation of Neb. Rev. Stat. § 77-2701.10(2) (Reissue 2018) and § 77-2701.16(2)(e). We affirm.

## BACKGROUND

The facts are largely undisputed. Diversified builds, maintains, repairs, and removes mobile telecommunication towers and equipment. Specifically, Diversified erects towers, builds lines and antennas, and installs roads and fences for wireless tower sites. At some sites, Diversified's work includes installing backup generators attached to concrete foundations, the purpose of which is to allow the telecommunications tower to operate during a power outage. At all relevant times, Diversified has been an "Option 2" contractor. This means that under § 77-2701.10(2), it pays sales tax or use tax as a consumer when it purchases building materials. Counsel explained at the hearing before the district court the advantage of being an Option 2 contractor, in that "it allows them to keep a tax-paid inventory. . . . [A]nd so this reduces the management cost and accounting cost and record-keeping that's required of keeping a tax-free inventory and then determining where all the building materials went and the local tax and regulations that apply there."

Following an audit, a sales tax deficiency assessment in the amount of $138,237.49 was issued to Diversified on March 11, 2016, finding tax owed of $117,969.15, plus $8,471.34 in interest and $11,797 in penalties. Diversified sought a redetermination of that deficiency.

A hearing was held on the petition for redetermination in May 2018. The Department offered no evidence at that hearing; Diversified offered the testimony of both Diversified's

director of operations and an individual who worked for the management company tasked with Diversified's accounting and bookkeeping. The parties stipulated to the admission of certain documents, primarily consisting of Diversified's invoices and photographs that corresponded to transactions for which, following its audit, the Department found additional taxation was owed.

The record also includes correspondence between the Department and Capital Tower & Communications, Inc. (Capital), a sister corporation to Diversified. Correspondence from 2008 shows that the Department and Capital discussed whether Capital was subject to the tax set forth in § 77-2701.16. The Department concluded that it was, and further noted that Capital's status as an Option 2 contractor did not entitle it to a credit or deduction for sales tax paid for materials.

In an order issued in January 2019, the Commissioner denied the petition for redetermination, except with respect to certain items stipulated to by the parties and not at issue in this appeal. Specifically, under § 77-2701.16(2), the Commissioner found that Diversified owed taxes on gross income from providing, installing, constructing, servicing, or removing property used in conjunction with mobile telecommunications services. The Commissioner disagreed with Diversified and found that certain things (notably, backup generators) were used in conjunction with providing mobile telecommunications services.

Diversified appealed to the district court. Following a hearing, the district court affirmed the decision of the Commissioner. The district court reasoned that the plain language of § 77-2701.16 applied to Option 2 contractors under § 77-2701.10 and that such a taxing structure did not constitute double taxation. In addition, the district court found that Diversified failed to show that the Department assessed tax for property not used in conjunction with "telecommunications services" and failed to show that the Department incorrectly calculated Diversified's tax liability.

## ASSIGNMENTS OF ERROR

On appeal, Diversified assigns that the district court erred in (1) affirming the Commissioner's order finding that Diversified must pay sales or use tax on building materials purchased by Diversified and must also remit sales tax on gross receipts earned from the "furnishing, installing, or connecting" of mobile telecommunications services; (2) finding that the Department's assessment of sales or use tax on Diversified, both when it purchased building materials and when it billed its customers for the construction using said materials, was not double taxation; (3) finding that the challenged building materials used by Diversified to which the Department assessed sales or use tax were used in conjunction with the "furnishing, installing, or connecting" of mobile telecommunications services; (4) finding that Diversified did not show that the Department incorrectly calculated Diversified's tax liability; and (5) finding that the Department's disparate treatment of Option 2 contractors like Diversified versus "Option 1" contractors under §§ 77-2701.10(1) and 77-2701.16 did not violate the Equal Protection Clause of the Nebraska or U.S. Constitution.

## STANDARD OF REVIEW

Under Neb. Rev. Stat. § 84-918(3) (Reissue 2014), an order of the district court "may be reversed, vacated, or modified for errors appearing on the record."

[1] When reviewing an order of the district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[1]

[2] The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court

---

[1] *Tyson Fresh Meats v. State*, 270 Neb. 535, 704 N.W.2d 788 (2005).

has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[2]

## ANALYSIS

On appeal, Diversified argues that the district court erred in agreeing with the Department that Diversified must both pay sales or use tax on building materials purchased by Diversified and also remit sales tax on gross receipts earned in the "furnishing, installing, or connecting" of mobile telecommunications services, even though Diversified used the previously taxed building materials to perform work for its customers. Diversified argues that this appeal presents a conflict between § 77-2701.10(2) and § 77-2701.16(2)(e).

*Relevant Law.*

Section 77-2701.10 defines

> [c]ontractor or repairperson [to] mean[] any person who performs any repair services upon property annexed to, or who annexes building materials to, real estate, including leased property, and who, as a necessary and incidental part of performing such services, annexes building materials to the real estate being so repaired or annexed or arranges for such annexation.

Under § 77-2701.10, a contractor may opt to be taxed as the retailer or as the consumer of building materials. Option 1 contractors are taxed as retailers[3]; Option 2 and "Option 3" contractors are taxed as consumers.[4] The Department is not permitted to "prescribe any requirements . . . restricting any person's election."[5] A contractor can change its status with permission of the Commissioner.[6]

---

[2] *Bridgeport Ethanol v. Nebraska Dept. of Rev.*, 284 Neb. 291, 818 N.W.2d 600 (2012).

[3] § 77-2701.10(1).

[4] § 77-2701.10(2) and (3).

[5] § 77-2701.10.

[6] *Id.*

In addition to sales tax on building goods, gross income from installing or connecting mobile telecommunications services is also taxable under Neb. Rev. Stat. § 77-2703 (Reissue 2018) and § 77-2701.16(2)(e). Section 77-2703(1) imposes a sales or use tax on gross receipts of "any person involved in the connecting and installing of the services" defined in § 77-2701.16(2).

As relevant to this appeal, § 77-2701.16(2)(e) defines gross receipts as

> [t]he gross income received from the provision, installation, construction, servicing, or removal of property used in conjunction with the furnishing, installing, or connecting of any public utility services specified in subdivision (2)(a) or (b) of this section . . . except when acting as a subcontractor for a public utility, this subdivision does not apply to the gross income received by a contractor electing to be treated as a consumer of building materials under subdivision (2) or (3) of section 77-2701.10 for any such services performed on the customer's side of the utility demarcation point.

The Nebraska Administrative Code specifically deals with Option 2 contractors in the area of telephone, cable satellite services, and other utilities, including mobile telecommunications services. It provides:

> 017.06E(1) Option 2 contractors who install, construct, service, repair, replace, upgrade, or remove outlets, wire, cable, satellite dishes or receivers, or any other property for telephone, telegraph, cable, satellite services, and mobile telecommunications services must collect sales tax as follows:
>
> 017.06E(1)(a) Option 2 contractors must collect sales tax on the total amount charged when working on the service provider's side of the demarcation point (i.e., the general distribution system) whether the property is annexed or remains tangible personal property.
>
> 017.02E(1)(b) Option 2 contractors must collect sales tax on the total amount charged when acting as a

subcontractor for a telephone, telegraph, or mobile tele-communications service provider on the customer's side of the demarcation point.

017.02E(1)(c) Except as provided in subsection 017.06E(1)(b), Option 2 contractors will not collect sales tax when working on the customer's side of the demarcation point.

017.02E(1)(d) Option 2 contractors will not collect sales tax on labor charges for installing or connecting gas, electricity, sewer, and water services.

017.06E(2) Option 2 contractors must pay sales tax or remit use tax on all of their purchases of wire, cable, outlets, and other property used to install or construct telephone, telegraph, cable, satellite services, and mobile telecommunications services.[7]

*Option 2 Contractor Taxed*
*Under § 77-2701.16.*

In its first assignment of error, Diversified argues that it is entitled to a credit or deduction for the sales tax it has already paid on the building materials used in its work for customers and that the district court erred in finding otherwise.

Diversified argues that there is a conflict between § 77-2701.10(2), allowing it to pay sales tax as a consumer, and § 77-2701.16(2)(e), requiring it to pay tax on the gross receipts it earned in the "furnishing, installing, or connecting" of mobile telecommunications services using those previously taxed goods. We find no conflict.

[3,4] The principles of law regarding the interpretation of statutory language are familiar. An appellate court will not resort to interpretation to ascertain the meaning of statutory words that are plain, direct, and unambiguous.[8] A collection of statutes pertaining to a single subject matter are in pari

---

[7] 316 Neb. Admin. Code, ch. 1. § 017.06E (2017).

[8] *Shelter Mut. Ins. Co. v. Freudenburg*, 304 Neb. 1015, 938 N.W.2d 92 (2020).

materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[9]

Together, § 77-2703(1) and § 77-2701.16(2) apply to "any person involved in [the] connecting and installing" of mobile telecommunications services. There is an exemption for the gross income of certain Option 2 and Option 3 contractors in § 77-2701.16(2)(e); that exemption is applicable to "services performed on the customer's side of the utility demarcation point."

We observe that Diversified does not assert on appeal that any of its services were performed on the customer's side of the demarcation point, and thus this exception is not applicable to Diversified. We further note that the very existence of this exception shows that Option 2 contractors were intended to be taxed under both §§ 77-2701.10 and 77-2701.16.

First, the enactment of this exception shows that the Legislature considered the interplay between Option 2 contractors and the tax on gross receipts and, at least implicitly, rejected an exemption as to the utility's side of the demarcation point. Moreover, if, as claimed by Diversified, all Option 2 contractors were entitled to a credit or deduction, the exception provided would be meaningless. A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[10]

Our conclusion is reinforced by the Department's regulations, which provide that an Option 2 contractor pay a sales tax on its purchase of "wire, cable, outlets, and other property used to install or construct . . . mobile telecommunications services."[11] Agency regulations properly adopted and filed

---

[9] *Id.*

[10] *Id.*

[11] 316 Neb. Admin. Code, ch. 1, § 017.06E(2).

with the Nebraska Secretary of State have the effect of statutory law.[12]

We find that the plain meaning of these statutes is clear and that Diversified is not entitled to the credit it seeks. Diversified's first assignment of error is without merit.

*Double Taxation.*

Diversified next contends that the taxation under §§ 77-2701.10 and 77-2701.16 constitutes impermissible double taxation. We reject this contention.

[5] We begin with a brief examination of the concept of double taxation in Nebraska. We have held that "[t]here is no 'double taxation' unless both taxes are of the same kind and have been imposed by the same taxing entity, for the same taxing period, for the same taxing purpose, and upon the same property or the same activity, incident, or subject matter."[13]

[6-8] Still, "unless it is unreasonable, confiscatory, or discriminatory, double taxation is not unconstitutional or prohibited, although it is [the court's] policy to guard against it."[14] We have held that a tax is confiscatory if it is established that it is so high as to effectively prohibit a taxpayer from engaging in a particular business.[15] Otherwise, "the Legislature may enact laws that result in double taxation and if it does it is a valid exercise of the taxing power,"[16] and if the plain meaning of a statute results in double taxation, courts will enforce the Legislature's intent.[17]

---

[12] *In re Application No. OP-0003*, 303 Neb. 872, 923 N.W.2d 653 (2019).

[13] *Anthony, Inc. v. City of Omaha*, 283 Neb. 868, 884, 813 N.W.2d 467, 480 (2012).

[14] *Id.*

[15] See, e.g., *Waste Connections of Neb. v. City of Lincoln*, 269 Neb. 855, 697 N.W.2d 256 (2005).

[16] *Stephenson School Supply Co. v. County of Lancaster*, 172 Neb. 453, 463, 110 N.W.2d 41, 47 (1961).

[17] See *Kappa Ethanol v. Board of Supervisors*, 285 Neb. 112, 825 N.W.2d 761 (2013).

The Department contends that two different activities are subject to tax here: the first is the sales or use tax on Diversified's purchase of building materials, and the second is the sales tax on the gross receipts from the "furnishing, installing, or connecting" of mobile telecommunications services. The Department also points out that Diversified failed to collect a sales tax from its customers as it was permitted to do.

[9] We agree that Diversified is not subject to double taxation in this case. In reaching this decision, we find our prior decision in *Anthony, Inc. v. City of Omaha*[18] instructive. There, we discussed the legal incidence of a sales tax and of an occupation tax. We explained that the legal incidence of a sales tax falls upon the purchaser, because it is a tax upon the privilege of buying tangible personal property.[19]

That concept is helpful here. In the first instance, Diversified purchased building goods and voluntarily, and for business reasons, elected to pay a sales tax as a consumer of those building goods.[20] Thus, that sales tax is part of Diversified's purchase price and it is the obligation of the retailer of those goods to remit the tax to the State.[21] As to the second instance, the sales tax on Diversified's gross receipts, the position of the parties is different. Diversified is no longer the consumer; rather, Diversified's customers are the consumers. The sales tax is part of the purchase price, and it is Diversified's obligation to remit the tax to the State.

Given these distinct scenarios, this situation presents no double taxation. While on a superficial level Diversified appears to pay sales tax in each instance, a closer examination shows that is not the case. As to the first transaction, Diversified is the entity being taxed. But in the second, Diversified's customer is the entity being taxed. Double taxation exists when "both

---

[18] *Anthony, Inc. v. City of Omaha, supra* note 13.

[19] *Id.*

[20] See § 77-2701.10(2) and (3).

[21] See § 77-2701.10(1).

taxes are . . . for the same taxing period, for the same taxing purpose, and upon the same property or the same activity, incident, or subject matter."[22] That is not the case here, and thus there is no double taxation presented.

Given the results of the audit in this case, it seems apparent that Diversified did not charge its customers the full amount of the tax owed. This failure does not change the fact that the incidence of the unpaid tax was on the customer, while the obligation to remit the tax belonged to Diversified.

There is no merit to Diversified's second assignment of error.

*Connecting of Mobile*
*Telecommunications*
*Services.*

Diversified next assigns that the district court erred in finding that certain portions of the deficiency determination—specifically electrical services, gaslines, concrete pads, and backup generators—were not used in conjunction with the "furnishing, installing, or connecting" of mobile telecommunications services. Diversified primarily argues that it relied on 2008 correspondence from the Department when it did not collect sales tax on the now-challenged items, with the exception of the backup generators. And the Department suggests that the audit was conducted in keeping with that advice, citing a 2015 letter indicating as much.

We turn first to the generators and the gaslines that power them. Diversified argues that cellular towers are fully functional without the generators and that the generators only provide backup power in the event of the failure of commercial power. As such, Diversified contends generators were not used in conjunction with the "furnishing, installing or connecting" of mobile telecommunications services. The Department disagrees.

―――――――――――

[22] *Anthony, Inc. v. City of Omaha, supra* note 13, 283 Neb. at 884, 813 N.W.2d at 480.

Section 77-2701.16(2)(e) provides that taxable gross receipts include "gross income received from the provision, installation, construction, servicing, or removal of property used in conjunction with the furnishing, installing, or connecting" of mobile telecommunications services. The term "in conjunction with" is not defined by statute, but the dictionary defines it to mean "in combination with" or "together with."[23]

Using this general definition, we agree with the State's position that the generators were installed "in conjunction with" the "furnishing, installing, or connecting" of mobile telecommunications services. While a generator and its fuel may not be critical to the usual operation of mobile telecommunications services, those items are necessary to the *uninterrupted* operation of such a service. We therefore find that generators and fuel are used to furnish mobile telecommunications services within the meaning of § 77-2701.16 and that taxation was appropriate.

Diversified also argues that the Department wrongly assessed tax on electrical services and concrete pads. Diversified argues that these items were not "in conjunction with" the "furnishing, installing, or connecting" of mobile telecommunications services, and also that it had not collected any tax, because the Department indicated in 2008 that these items were not taxable.

We reject both contentions. We have compared the Department's audit, the 2008 and 2015 letters, Diversified's invoices, and the testimony offered at the hearing. We conclude that the Department did conduct the audit in accordance with the parameters of the 2008 and 2015 correspondence.

Moreover, we agree with the Department and the district court that the items identified by the Department as being subject to taxation—specifically, the installation and removal of electrical equipment and the installation of concrete pads

---

[23] "In conjunction with," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/in%20conjunction%20with (last visited Aug. 5, 2020).

for equipment mounting—following the audit were all used "in conjunction with" the "furnishing, installing, or connecting" of mobile telecommunications services.

This assignment of error is without merit.

*Calculation of Tax Liability.*

Diversified argues the district court erred in concluding that it did not show the Department incorrectly calculated its tax liability. Diversified claims the evidence showed that all of its records for the audit period were available to the Department and that the Department therefore erred in estimating its deficiency based on the 2014 tax year. Diversified asserts that the district court "twisted the language [of the Nebraska Administrative Code] into placing an affirmative duty and evidentiary burden on the taxpayer to prove that there were not any missing records."[24]

But as we view the record, the issue is not that Diversified did not provide access to the Department at the time of the audit, but that Diversified now challenges that deficiency without offering documentation to prove its assertion that the Department's determination was wrong. It is a problem with the record as provided to the district court and to this court, not a problem with the documentation provided to the Department. In other words, Diversified would like us to conclude that it gave proper access to the Department and that the Department erred in its determination, without providing the court the documentation necessary to prove the determination was wrong.

There is no merit to this assignment of error.

*Equal Protection.*

Finally, Diversified assigns that the Department's misapplication of this tax scheme violates its right to equal protection. Diversified argues that the Department's position effectively requires it to operate as an Option 1 contractor, in

---

[24] Replacement brief for appellant at 31.

violation of the portion of § 77-2701.10 that prohibits the Department from restricting a taxpayer's election under that section. Diversified further argues that its rights were infringed upon, because it is not permitted to retroactively elect Option 1 status. We reject these claims.

[10,11] In an equal protection challenge, when a fundamental right or suspect classification is not involved, the act is a valid exercise of police power if the act is rationally related to a legitimate governmental purpose.[25] The party attacking a statute as violative of equal protection has the burden to prove that the classification violates the Equal Protection Clause.[26]

As an initial matter, we find that Diversified has not met its burden to show that the classification in question was not rationally related to a legitimate governmental purpose.

Moreover, as we have found above, the Department was correct in its application of these statutes. And we find no State action with respect to the tax consequences of an Option 1 versus Option 2 election. While the taxing scheme enacted by the Legislature might make operating as an Option 2 contractor less advantageous, there is nothing that forces a change in election by Diversified. Nor does Diversified direct us to any authority which might suggest that a less advantageous business outcome due to a taxation structure is equivalent to the Department or the State action requiring a taxpayer to adopt a particular election under our tax laws.

Finally, we observe that Diversified was notified in 2008 that acting as an Option 2 contractor would result in the tax consequences it now challenges.

There is no merit to this assignment of error.

## CONCLUSION

The decision of the district court affirming the Department's deficiency determination is affirmed.

AFFIRMED.

---

[25] *Waste Connections of Neb. v. City of Lincoln, supra* note 15.

[26] *Id.*