ALLIED MUTUAL INSURANCE COMPANY, A CORPORATION, APPELLEE, V. GLEN MUSIL AND JAMES MUSIL, APPELLEES, AND CHRISTIE HABE, APPELLANT.

493 N.W.2d 171

Filed December 18, 1992.   No. S-90-395.

Walter E. Zink II and Michael A. England, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Stephen L. Ahl, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellee Allied Mutual.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

In this declaratory judgment action, the district court sustained the plaintiff-appellee Allied Mutual Insurance Company's motion for summary judgment upon a finding that the automobile liability insurance policy Allied had issued to the defendant-appellee Glen Musil did not provide liability protection for an accident involving a vehicle his son, the defendant-appellee James Musil, was driving and in which the defendant-appellant, Christie Habe, was riding as a passenger. Habe asserts the district court erred in so finding and ruling. We affirm.

The accident occurred at approximately 1:15 a.m. on August 14, 1988, when the driver ran the 1976 Chevrolet Blazer he was operating into a ditch. As a result, the Blazer rolled over and Habe sustained injuries.

Under the terms of the policy, Allied undertook to pay damages for bodily injury for which "any 'insured' " became legally responsible because of an automobile accident.

The policy defines the term "insured" as:

1. You or any "family member" for the ownership, maintenance or use, including loading and unloading, of any auto or "trailer."

2. Any person using, including loading and unloading, "your covered auto." This provision . . . does not apply to any person other than:

a. you or any "family member . . . ."

To the extent relevant here, "your" is defined as "[t]he 'named insured' shown in the Declarations."

The term "family member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household."

The policy defines a "covered auto" as:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you . . . become the owner:

    a. a private passenger auto; or

    b. a pickup or van.

This provision [2] applies only if:

    a. you . . . acquire the vehicle during the policy period

. . . .

The declaration page of the Allied policy, which defines the policy period to be from August 9, 1988, to February 8, 1989, names the father as the insured, but does not list the Blazer as being among the vehicles covered. The policy excludes from the liability protection it affords damages arising from "the ownership, maintenance or use of . . . [a]ny vehicle, other than 'your covered auto,' which is . . . furnished or available for the regular use of any 'family member.' "

The Blazer was purchased from an automobile dealer in Ravenna in 1976 by the driver's brother, Thomas Musil, who was then 17 years old. The father's signature was needed to obtain financing for the vehicle, and at the suggestion of the dealer, both the brother's and father's names were placed on the certificate of title, which gives each the rights of survivorship. Although the title remained unchanged until after the subject accident, the father never considered the vehicle to be his, and the driver considered the brother to be the owner of the Blazer. The brother paid the taxes, licensing, repairs, and maintenance on the Blazer. The Blazer was covered under a policy of automobile liability insurance issued by Union Insurance, which the brother obtained.

Upon graduating from Ravenna High School in 1986, the driver enrolled at the University of Nebraska-Lincoln. During his first year at the university, he lived in an oncampus dormitory. During his second year, he lived in a rented house.

While the driver was away at the university, his parents maintained a room at their house in Ravenna for his use. Throughout his attendance at the university, the driver considered his parents' house to be his permanent residence. He maintained a checking account at a local bank and remained a member of the local Lutheran church. Moreover, the driver owned an automobile, a 1974 Chevrolet Impala, which was registered in Buffalo County, the county of his parents' residence.

Unless it was needed by the brother, the driver was permitted to take the Blazer with him to Lincoln throughout the spring semester of 1988. When the driver took the Blazer to Lincoln, he left his Impala in Ravenna for the brother's family's use. The driver commuted from Lincoln to Ravenna and back one or two times per month and used the Blazer for his personal transportation while in Lincoln. On the occasions the brother needed to use the Blazer, the driver would use his own Impala. The brother only needed the use of the Blazer "maybe once" during the spring semester of 1988.

The driver did not attend the university in the summer of 1988 and lived gratis with his parents, working as a farm laborer for the brother, who was a farmer renting most of his land from the father. During this period, the driver continued to use the Blazer except for those occasions when the brother wanted it.

While the parties have spent considerable effort considering whether the father was an owner of the Blazer, the matter is irrelevant, and we therefore do not concern ourselves with that issue. As the Blazer was neither listed in the policy declarations as one of the vehicles insured nor acquired by anyone during the policy period, it was clearly not a "covered" automobile as such is defined by the policy.

The question thus is whether the policy nonetheless provided the driver liability protection as a nonexempted unnamed insured. As noted earlier, under the pertinent policy language, a member of the named insured's family using any automobile is such an insured. A member of the family is one who is related to the named insured by blood and resides in the named insured's household. It is undisputed that the driver is the son of the named insured and is thus related to him by blood. Moreover, we have declared that as used in an omnibus clause extending

liability protection to members of the named insured's household, the word " ' "household" ' " means " ' "[t]hose who dwell under the same roof and compose a family." ' " See *State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342, 344, 190 N.W.2d 789, 791 (1971), quoting *Andrews v. Commercial Casualty Ins. Co.*, 128 Neb. 496, 259 N.W. 653 (1935).

The evidence that the driver lived with his parents free of charge during the summer of 1988, that his parents maintained a room for him at their home while he attended the university, that he made frequent trips home during the school year, and that he maintained his local checking account and local church membership establishes as a matter of law that the driver was a member of the father's household at the time of the accident and thus a member of his family.

The controlling issue therefore becomes whether the driver falls within the exemptions to the liability protection otherwise provided him as an unnamed insured. Except for the named insured, the policy excludes from its protection the use of a noncovered automobile which is furnished or available for the regular use of a member of the named insured's family.

The evidence in this regard is that the driver could use the Blazer any time the brother did not himself need it and that the driver took the Blazer to Lincoln while he attended the university and used it as his own throughout the spring and summer of 1988. This evidence, combined with the evidence concerning the driver's living arrangements, establishes as a matter of law that the Blazer was furnished and was available for the driver's regular use while he was a member of the named insured's, that is, the father's, family.

Habe, however, argues that the "furnished or available for the regular use of any 'family member' " exclusion is preempted by Neb. Rev. Stat. § 60-535 (Reissue 1988), which reads, in pertinent part, that "[s]uch motor vehicle liability policy shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him . . . ." It is true that in *Rudder v. American Standard Ins. Co. of Wisconsin*, 187 Neb. 778, 194 N.W.2d 175 (1972), we ruled an exclusion from liability protection of any automobile owned by or hired, furnished, or available for the regular use of

the named insured, spouse, or any resident of the same household to be without legal effect as repugnant to the clear mandate of § 60-535. See, also, *Smith v. Canal Ins. Co.*, 184 Neb. 866, 173 N.W.2d 36 (1969) (applying § 60-535 to replacement automobile). It must be recognized, however, that these cases dealt with policies which had been certified as proof of future financial responsibility under the Motor Vehicle Safety Responsibility Act, Neb. Rev. Stat. § 60-501 et seq. (Reissue 1988 & Cum. Supp. 1992).

Even if § 60-535 applies to other than named insureds, a matter we do not decide, its language pertains only to policies which have been filed with the Nebraska Department of Motor Vehicles and certified as proof of future financial responsibility pursuant to the requirements of the aforementioned act. See *Allstate Ins. Co. v. Farmers Mut. Ins. Co.*, 233 Neb. 248, 444 N.W.2d 676 (1989) (act not applicable to policy not used as proof of future financial responsibility), citing *Reserve Ins. Co. v. Aguilera*, 181 Neb. 605, 150 N.W.2d 114 (1967). The policy in question is not such a policy.

Being referred to no statute which prohibits the afore-described family-use exception in a policy of automobile liability insurance not certified as proof of future financial responsibility, and being aware of none, we discern no legal basis for not enforcing the clear and unambiguous language of the subject exception. See *Allstate Ins. Co. v. Farmers Mut. Ins. Co.*, 233 Neb. at 251, 444 N.W.2d at 678 (ruling valid as against the named insured clause in noncertified policy exempting " 'insured or any member of the family of the insured residing in same household as the insured' " from protection where definition of "insured" encompassed "named insured").

The record disclosing no genuine issue concerning any material fact or as to the ultimate inferences deducible from such fact or facts and that Allied is entitled to judgment as a matter of law, *Alder v. First Nat. Bank & Trust Co.*, 241 Neb. 873, 491 N.W.2d 686 (1992), we affirm.

AFFIRMED.

WHITE, J., dissents.