Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/01/2020 08:08 AM CDT

Shelter Mutual Insurance Company,
appellee, v. Larry Freudenburg,
appellant.

___ N.W.2d ___

Filed February 7, 2020.    No. S-19-265.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.

4. ____: ____. An appellate court will not resort to interpretation to ascertain the meaning of statutory words that are plain, direct, and unambiguous.

5. **Statutes: Legislature: Intent.** A collection of statutes pertaining to a single subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

6. **Statutes.** It is impermissible to follow a literal reading that engenders absurd consequences where there is an alternative interpretation that reasonably effects a statute's purpose.

7. ____. A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

Appeal from the District Court for Lancaster County: Jodi L. Nelson, Judge. Reversed and remanded for further proceedings.

George H. Moyer and Jack W. Lafleur, of Moyer & Moyer, for appellant.

Theresa D. Koller and Nathan D. Clark, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

The primary issue in this case is whether Neb. Rev. Stat. § 60-310 (Cum. Supp. 2018) allows provisions known as partial household exclusion clauses, which reduce automobile liability coverage from the policy amount to the state minimum when the injured person is an insured, relative, or resident of the insured's household. The district court found that the statute unambiguously defined an automobile policy as coverage in the amounts set by the state minimums and that the second sentence of the statute prevented complete household exclusions, but did not prohibit partial exclusions. The district court granted summary judgment in favor of Shelter Mutual Insurance Company (Shelter) upholding the partial household exclusion clause, which reduced the insured's coverage from the policy amount of $100,000 to $25,000.

## BACKGROUND

The insured, Larry Freudenburg, appeals from an order granting summary judgment in favor of Shelter in its action for declaratory judgment regarding the application of § 60-310 to the underlying automobile liability policy and against Freudenburg on his counterclaim for breach of contract. Freudenburg did not file a cross-motion for summary judgment. Shelter originally

brought the action against both Freudenburg and Bruce R. Ramage, the director of the Nebraska Department of Insurance, in his official capacity. Ramage was later dismissed from the case and is not part of this appeal.

The facts are undisputed. On October 20, 2016, Freudenburg was traveling as a passenger in a car covered by a policy Freudenburg and his wife had purchased from Shelter. Freudenburg made a claim for his injuries under the Shelter policy because the injuries were not covered by any other policies. After the accident, Freudenburg filed a claim for reimbursement of expenses based on his injuries totaling over $100,000. Rather than paying the policy limit for bodily injury in the amount of $100,000, Shelter paid $25,000, which is the minimum level of automobile liability coverage that drivers in Nebraska are required by law to carry.

Shelter refused to pay Freudenburg's request for an additional $75,000 based on a partial household exclusion clause in Freudenburg's policy. A section titled "Partial Exclusions From Coverage A and Coverage B" begins with the following:

> Coverage A [for bodily injury] and Coverage B [for property damage] do not cover any of the types of **damages** listed below unless no other policy of liability insurance provides coverage for those **damages** in the amount required by the applicable **financial responsibility law**. In that event, the minimum dollar amount of coverage required by the applicable **financial responsibility law** will be provided by this policy. No additional benefits that are not required by that law will be provided.

Subsection 13 of this provision allows for a reduction in bodily injury coverage for "[d]**amages** owed to any **insured, relative,** or **resident** of an **insured's** household." Shelter asserted that the $100,000 policy for bodily injury was reduced to the Nebraska minimum of $25,000 pursuant to the partial household exclusion clause.

Shelter received a letter from Ramage on behalf of the Nebraska Department of Insurance which asked Shelter why it

had not paid the full $100,000 of the policy. Shelter's response cited the partial household exclusion clause and asserted that such an exclusion was not prohibited by Nebraska law, specifically that it did not fall under the prohibition found in § 60-310. The Nebraska Department of Insurance sent a letter indicating it disagreed with Shelter's interpretation of § 60-310, which provides:

> Automobile liability policy means liability insurance written by an insurance carrier duly authorized to do business in this state protecting other persons from damages for liability on account of accidents occurring subsequent to the effective date of the insurance arising out of the ownership of a motor vehicle (1) in the amount of twenty-five thousand dollars because of bodily injury to or death of one person in any one accident, (2) subject to the limit for one person, in the amount of fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and (3) in the amount of twenty-five thousand dollars because of injury to or destruction of property of other persons in any one accident. An automobile liability policy shall not exclude, limit, reduce, or otherwise alter liability coverage under the policy solely because the injured person making a claim is the named insured in the policy or residing in the household with the named insured.

In June 2017, Shelter brought a declaratory action seeking to declare that partial household exclusions are permissible under Nebraska law. The district court determined that § 60-310 unambiguously forbade only reductions or alterations in coverage that result in the coverage for the insured, relative, or household member's falling below the mandatory minimums described in the first sentence of the statute. The court declined to consider the legislative history concerning the 2013 change to § 60-310, which added the language "limit, reduce, or otherwise alter" to the prior version of the statute and explicitly discussed the Legislature's intent to thereby prohibit partial

household exclusions. The court concluded that partial house-
hold exclusions are not prohibited by § 60-310. The court
granted summary judgment to Shelter. Freudenburg appeals.

## ASSIGNMENTS OF ERROR

Freudenburg assigns that summary judgment was improper
because the trial court erred in (1) interpreting the last sentence
of § 60-310 to allow for reductions in coverage down to the
state minimum; (2) refusing to consider the legislative history
of 2013 Neb. Laws, L.B. 316; and (3) enforcing the partial
household exclusion contained in the policy Freudenburg pur-
chased from Shelter.

## STANDARD OF REVIEW

[1] An appellate court affirms a lower court's grant of sum-
mary judgment if the pleadings and admitted evidence show
that there is no genuine issue as to any material facts or as
to the ultimate inferences that may be drawn from the facts
and that the moving party is entitled to judgment as a matter
of law.[1]

[2] In reviewing a summary judgment, an appellate court
views the evidence in the light most favorable to the party
against whom the judgment was granted, and gives that party
the benefit of all reasonable inferences deducible from the
evidence.[2]

[3] To the extent an appeal calls for statutory interpretation
or presents questions of law, an appellate court must reach an
independent conclusion irrespective of the determination made
by the court below.[3]

## ANALYSIS

Although Freudenburg has assigned several errors on appeal,
the errors are rooted in a single question of how to interpret

---

[1] *Williamson v. Bellevue Med. Ctr., ante* p. 312, 934 N.W.2d 186 (2019).

[2] *Id.*

[3] *In re Adoption of Micah H.*, 301 Neb. 437, 918 N.W.2d 834 (2018).

§ 60-310. Shelter believes the only question in this regard is how to understand § 60-310's term "automobile liability policy" in the context of the statute's prohibition that "[a]n automobile liability policy shall not exclude, limit, reduce, or otherwise alter liability coverage under the policy solely because the injured person making a claim is the named insured in the policy or residing in the household with the named insured" (hereinafter the household exclusion prohibition). We also find the statute's term "liability coverage" to be essential to our analysis.

[4-7] An appellate court will not resort to interpretation to ascertain the meaning of statutory words that are plain, direct, and unambiguous.[4] A collection of statutes pertaining to a single subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[5] It is impermissible to follow a literal reading that engenders absurd consequences where there is an alternative interpretation that reasonably effects a statute's purpose.[6] A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[7]

The Motor Vehicle Registration Act[8] generally provides the rules and regulations for acquiring and maintaining registration of vehicles that are operating on Nebraska roadways. The first sentence of § 60-310 expressly defines "automobile liability policy" to be coverage in certain amounts based on state minimums for each category, stating:

> Automobile liability policy means liability insurance
> written by an insurance carrier duly authorized to do

---

[4] *State v. Montoya, ante* p. 96, 933 N.W.2d 558 (2019).

[5] *State v. Paulsen, ante* p. 21, 932 N.W.2d 849 (2019).

[6] *State v. McColery*, 301 Neb. 516, 919 N.W.2d 153 (2018).

[7] *Id.*

[8] See Neb. Rev. Stat. §§ 60-301 to 60-3,231 (Reissue 2010 & Cum. Supp. 2016).

business in this state protecting other persons from damages for liability on account of accidents occurring subsequent to the effective date of the insurance arising out of the ownership of a motor vehicle (1) in the amount of twenty-five thousand dollars because of bodily injury to or death of one person in any one accident, (2) subject to the limit for one person, in the amount of fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and (3) in the amount of twenty-five thousand dollars because of injury to or destruction of property of other persons in any one accident.

The coverage so described is commonly referred to as "25/50/25 coverage." Other statutes of the Motor Vehicle Registration Act then set forth that a driver must show proof of financial responsibility[9] or a current "automobile liability policy"[10] in order to register a vehicle and must have a current "automobile liability policy"[11] anytime the vehicle is operated in Nebraska.

The second, and last, sentence of § 60-310 addresses the legality of policy provisions that seek to exclude or alter coverage based on the injured claimant in the accident's being the named insured or a member of the named insured's household. This is in contrast to a friend or acquaintance who is injured as the driver or passenger of the insured's vehicle, who would be covered up to the general coverage limits of the insured's policy.

The two sentences of § 60-310 both use the term "automobile liability policy," and we logically must read both sentences as using the same meaning for that term. Further, under a plain reading of the second sentence of § 60-310, we understand "under the policy" as referring to that same "automobile liability policy."

---

[9] See § 60-346.

[10] See § 60-387.

[11] See § 60-390.

Shelter observes that the definition of "automobile liability policy" in the first sentence of § 60-310 has no modifier and simply describes coverage "in the amount of" 25/50/25 coverage. Shelter proposes that the plain language of § 60-310 thus requires that we read "automobile liability policy" as a policy providing coverage "only" or "exactly" in the amount of 25/50/25. Freudenburg, in contrast, asserts that "automobile liability policy" should be read as a policy providing "at least" 25/50/25 coverage. We agree with Freudenburg.

Shelter's proposed definition of "automobile liability policy," i.e., "25/50/25 . . . liability insurance"[12] (nothing more and nothing less), engenders absurd consequences when applied to the second sentence of § 60-310, as well as elsewhere under the act. If, under the second sentence of § 60-310, a policy with coverage greater than the 25/50/25 minimum is not an "automobile liability policy," then the household exclusion prohibition of the second sentence would not apply to such policies at all. Under Shelter's proposed construction, the household exclusion prohibition of § 60-310 would read as follows: "[A 25/50/25] automobile liability policy shall not exclude, limit, reduce, or otherwise alter liability coverage under the [25/50/25] policy solely because the injured person making a claim is the named insured in the [25/50/25] policy or residing in the household with the named insured." Such a reading would mean that the household exclusion prohibition of the second sentence of § 60-310 would not even be applicable to Freudenburg's policy under Shelter's interpretation of "automobile liability policy," because his policy was for coverage referred to as "100/300/100." Under Shelter's proposed definition of "automobile liability policy," Shelter would have been free under Nebraska law to completely exclude Freudenburg from coverage.

Furthermore, such a reading would lead to the absurd result that the Motor Vehicle Registration Act does not regulate

---

[12] Brief for appellee at 13.

all automobile insurance purchased by Nebraska residents, but only insurance for coverage in the minimum amount of 25/50/25.[13] This appears contrary to the overall intent of the statutory scheme, as usage of the term "automobile liability policy" elsewhere seems to include policies with coverage in excess of the 25/50/25 minimums set forth in § 60-310.[14] For example, reading the definition of "automobile liability policy" to include policies that exceed the state minimums is in harmony with the language of § 60-390, which provides in part:

> On the back of the certificate, the certificate of registration shall include a statement in boldface print that an automobile liability policy or proof of financial responsibility is required in Nebraska. By paying the required registration fees, every person whose name appears on the registration of the motor vehicle or trailer certifies that a current and effective automobile liability policy or proof of financial responsibility will be maintained for the motor vehicle or trailer at the time of registration and while the motor vehicle or trailer is operated on a highway of this state and that he or she will also provide a current and effective automobile liability policy, evidence of insurance, or proof of financial responsibility for the motor vehicle or trailer upon demand.

Under Shelter's interpretation of "automobile liability policy," anyone carrying proof of a policy in amounts that are not exactly 25/50/25 is not carrying proof of an effective automobile liability policy.

Thus, "automobile liability policy" must mean a policy with coverage in at least the 25/50/25 amount and not a policy with overall limits of "only" or "exactly" the minimum 25/50/25 coverage amount. Understanding "automobile liability policy" to mean coverage in the amount of at least 25/50/25 is in

---

[13] See §§ 60-301 to 60-3,231.

[14] See §§ 60-323, 60-387, 60-390, 60-3,167, and 60-3,168.

harmony with the term's usage throughout the Motor Vehicle Registration Act.[15] Moreover, this understanding avoids two absurd results: First, it avoids a situation where the Motor Vehicle Registration Act only regulates policies with coverage limits of 25/50/25. Second, it avoids the situation where a policy that includes coverage limits above 25/50/25 does not qualify as proof of an automobile liability policy elsewhere in the act.[16]

Perhaps realizing that it would be nonsensical to read the household exclusion prohibition as applying to only 25/50/25 policies, Shelter does not acknowledge the logical consequences of its plain language argument that "automobile liability policy" means a policy providing "only" or "exactly" 25/50/25 coverage. Shelter instead asserts that a consistent application of its understanding of "automobile liability policy" results merely in prohibiting exclusions for a claimant insured or household member, in policies with underlying maximum coverage in any amount, which result in lowering coverage for such claimants below the 25/50/25 minimum required of drivers under Nebraska law. By conceding the applicability of the household exclusion prohibition to policies providing coverage above the 25/50/25 minimum, such a proposed reading of the statute actually utilizes Freudenburg's understanding of "automobile liability policy" as a policy providing coverage in at least the 25/50/25 amount, not Shelter's understanding of "automobile liability policy" as a policy with coverage in only the 25/50/25 amount.

What Shelter's argument really is about is the term "liability coverage." In essence, Shelter's reading proposes the insertion of the modifier "the minimum 25/50/25" into the phrase "liability coverage" in the last sentence of § 60-310. In other words, Shelter wants to make the term "liability coverage" synonymous with the definition of "automobile liability policy."

---

[15] See State v. Paulsen, supra note 5.

[16] See § 60-387.

The Motor Vehicle Registration Act does not define "liability coverage." But while not controlling, the term "liability coverage" is used elsewhere in the statutes governing insurance to refer collectively to the various categories of insurance that cover liability arising out of automobile accidents.[17] We give the term the same plain meaning in § 60-310.

As such, the term "liability coverage" refers more broadly to the various types of liability coverage afforded in an automobile liability policy. From its plain meaning, it follows that where, as we have already determined, "automobile liability policy" includes all policies with coverage of at least 25/50/25, the second sentence of § 60-310 clearly prohibits any "exclu[sions], limit[ations], reduc[tions], or . . . alter[ations]" to the policy's liability coverage "solely because the injured person making a claim is the named insured in the policy or residing in the household with the named insured."

We hold that § 60-310 applies to policies both with coverage limits at the minimum required by law and with coverage limits above the minimum required by law and that it prohibits both exclusions that seek to completely exclude liability coverage for an injured insured or household member and exclusions that seek to limit, reduce, or alter the liability coverage to the minimum required by law for an injured insured or household member. Simply put, an automobile liability policy in any coverage amount is not permitted to exclude or reduce liability coverage under the policy solely on the ground the claimant is a named insured or resident in the named insured's household.

Because the plain language of § 60-310, viewed with the other sections of the Motor Vehicle Registration Act, permits only one reasonable interpretation, we do not consider the legislative history. However, for the sake of completeness, we note that in 2013, the Legislature amended the household exclusion prohibition to its current form. The bill proposing

---

[17] See, e.g., Neb. Rev. Stat. §§ 44-514 and 60-1407.01(3) (Reissue 2010).

the 2013 amendment was introduced with the specific intent to render invalid both partial household exclusions and total household exclusions. The record of the committee hearings for 2013 Neb. Laws, L.B. 316, demonstrates the bill's sponsor and the committee understood that the language originally added in 1995 resulted in preventing only total household exclusions, which was not what the Legislature had wished to achieve.

The intent of the 2013 amendment was to prohibit all household exclusions, both total and partial.[18] The bill's sponsor, Senator Burke Harr, explained it this way:

> For example, a person might have a policy providing $500,000 in coverage, which we discussed earlier, but the insurer includes a provision that says if the insured person . . . the injured person . . . is related to or residing with the named insured, the coverage is only $25,000. This thwarts the intent of the Legislature. I believe (LB)316 maintains the intent of the Legislature in repealing the guest statute and prohibiting household exclusions.[19]

Harr provided the same explanation to the entire Legislature during the floor debates.[20] The Legislature passed the law on a vote of 44 to 0.[21]

## CONCLUSION

We conclude that the district court erred in granting summary judgment to Shelter on its declaratory judgment action, and therefore, we must reverse that decision and remand this matter for further proceedings consistent with this opinion. For the foregoing reasons, the judgment of the district court

---

[18] See Introducer's Statement of Intent, L.B. 316, Committee on Banking, Commerce and Insurance, 103d Leg., 1st Sess. (Feb. 11, 2013).

[19] Committee on Banking, Commerce and Insurance Hearing, L.B. 316, 103d Leg., 1st Sess. (Feb. 11, 2013).

[20] Floor Debate, L.B. 316, 103d Leg., 1st Sess. (Mar. 01, 2013).

[21] Floor Debate, L.B. 316, 103d Leg., 1st Sess. (Mar. 28, 2013).

is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.

Papik, J., not participating.

Stacy, J., concurring.

I agree with the majority's resolution of this case, which presents a very narrow question of statutory construction. We are asked to determine whether a 2013 amendment to Neb. Rev. Stat. § 60-310 (Reissue 2010) should be understood to prohibit, or instead to authorize, a clause in an automobile liability policy that reduces liability coverage down to the statutory minimum when the claimant is a named insured or resides in the named insured's household. The parties refer to such a provision as a "partial household exclusion." I write separately to provide a brief overview of the historical treatment of household exclusions under Nebraska law.

In a series of opinions beginning with *Allstate Ins. Co. v. Farmers Mut. Ins. Co.*,[1] decided in 1989, this court held that household exclusions in automobile liability insurance policies were valid and enforceable under Nebraska law and not contrary to public policy.[2] In these cases, we reasoned generally that household exclusions, when contained in an automobile liability policy not being used as proof of future financial responsibility, did not violate public policy because the statutes prescribing the general requirements for automobile liability

[1] *Allstate Ins. Co. v. Farmers Mut. Ins. Co.*, 233 Neb. 248, 444 N.W.2d 676 (1989).

[2] See *id.* (holding household exclusion in automobile liability policy is not invalid as against public policy); *State Farm Mut. Auto. Ins. Co. v. Hildebrand*, 243 Neb. 743, 502 N.W.2d 469 (1993) (holding household exclusion in automobile liability policy not used as proof of financial responsibility under Motor Vehicle Safety Responsibility Act does not violate public policy and is enforceable); and *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co*., 243 Neb. 779, 502 N.W.2d 484 (1993) (same).

policies in Nebraska did not contain language prohibiting such exclusions.[3]

In 1995, the Legislature changed that by adding the following language to Neb. Rev. Stat. § 60-301(3) (Supp. 1995): "An automobile liability policy shall not exclude liability coverage under the policy solely because the injured person making a claim is the named insured in the policy or a spouse or relative residing in the same household with the named insured."[4] The practical effect of this new statutory language was to establish, as a matter of public policy in Nebraska, that household exclusions were no longer valid and enforceable in automobile liability policies.

In 2005, the Legislature recodified the Motor Vehicle Registration Act and, as relevant here, repealed § 60-301 and enacted § 60-310.[5] After the 2005 amendments, § 60-310 prohibited provisions in automobile liability policies that "exclude liability coverage under the policy solely because the injured person making a claim is the named insured in the policy or residing in the household with the named insured."[6] Thereafter, in 2013, the Legislature amended that portion of the statute which prohibits household exclusions, so that § 60-310 (Cum. Supp. 2018) currently provides: "An automobile liability policy shall not exclude, limit, reduce, or otherwise alter liability coverage under the policy solely because the injured person making a claim is the named insured in the policy or residing in the household with the named insured."

Shelter argues that its partial household exclusion does not run afoul of the current language in § 60-310 because it neither completely excludes liability coverage nor reduces liability coverage below the statutory minimum required under Nebraska law.

---

[3] See *id.*

[4] See 1995 Neb. Laws, L.B. 37.

[5] 2005 Neb. Laws, L.B. 274.

[6] See *id.*

In that regard, it is worth noting that some other courts have construed their statutory scheme to allow partial or limited household exclusions in automobile liability policies, so long as liability coverage is afforded up to the minimum limits required by the state's financial responsibility statute.[7] However, I agree with the majority's conclusion that the plain language in § 60-310 simply is not amenable to such a construction.

Section 60-310 uses language that is plain and unambiguous to prohibit automobile liability policies from excluding, limiting, reducing, or otherwise altering liability coverage solely because the claimant is the named insured or residing in the named insured's household. This statutory language, both on its face and in light of its historical evolution, leaves no room for a successful argument that by amending § 60-310 in 2013, the Legislature intended to actually allow household exclusions in automobile liability policies so long as they did not reduce liability coverage below the minimum required limits.

It is the function of the Legislature through the enactment of statutes to declare what is the law and public policy of this state.[8] While there may be sound public policy reasons to limit insurance coverage based on whether one resides in the

---

[7] See, e.g., *Shook v. State Farm Mut. Ins. of Bloomington, Ill.*, 872 F. Supp. 768 (D. Mont. 1994) (household exclusion that limited coverage to statutory minimums did not violate public policy inherent in Montana's mandatory insurance law); *Stearman v. State Farm*, 381 Md. 436, 849 A.2d 539 (2004) (household exclusion reducing limit of liability coverage to statutory minimum amount valid when policy otherwise provided liability coverage in excess of statutory minimum liability limits); *Hoque v. Empire Fire and Marine Ins. Co.*, 281 Ga. App. 810, 637 S.E.2d 465 (2006) (when policy provides liability coverage above statutorily minimum, household exclusion does not violate public policy so long as recovery is permitted in amount of compulsory minimum insurance).

[8] *Alsidez v. American Family Mut. Ins. Co.*, 282 Neb. 890, 807 N.W.2d 184 (2011).

named insured's household,[9] that is a decision properly left to the Legislature, not the courts. Because I agree with the majority that the language of § 60-310 is plain and unambiguous in prohibiting provisions in an automobile liability policy that exclude, limit, reduce, or alter liability coverage solely because the claimant is the named insured or resides in the named insured's household, I concur in the result reached here.

---

[9] See, e.g., *id.* (holding exclusions in uninsured and underinsured motorist coverage for vehicles owned or regularly used by named insured or any resident of their household do not violate public policy as expressed by Legislature because exclusions mirror statutory provisions). See, also, Neb. Rev. Stat. § 44-6407(2) (Reissue 2010) (defining uninsured or underinsured motor vehicle to exclude vehicles "[o]wned by, furnished, or available for the regular use of the named insured or any resident of the insured's household").